THEODORE RANDALL MILLER, Plaintiff-Appellant, v. NATIONAL ASSOCIATION OF REALTORS, Defendant-Appellee and Third-Party Plaintiff (Arthur Rubloff and Company, Third-Party Defendant).

First District (3rd Division)   No. 1—92—1908

Opinion filed November 30, 1994.—Rehearing denied March 31, 1995.

Michael J. O'Halloran and Keely Truax, both of Chicago, for appellant.

John A. Childers, Dennis C. Cusack, Thomas H. Fegan, and Mindy Kallus, all of Chicago, for appellee.

William E. Hoversen, Jr., of Chicago, for Arthur Rubloff & Company.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

Plaintiff, Theodore Randall Miller, appeals from an order granting, pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005 (now codified as 735 ILCS 5/2—1005 (West 1992))), summary judgment in favor of defendants, National Association of Realtors (hereinafter National) and Arthur Rubloff & Company (hereinafter Arthur Rubloff). Jurisdiction is vested in this court pursuant to Supreme Court Rule 301 (134 Ill. 2d R. 301).

For the reasons which follow, we reverse and remand.

## FACTUAL BACKGROUND

On July 10, 1986, plaintiff worked as a delivery man for a beer distributor and was making a regular delivery of beer kegs to the Billy Goat Inn, a tavern located at 430 North Michigan Avenue in Chicago, when he slipped on a piece of cardboard and seriously injured himself inside the building on a loading ramp. The loading ramp led to the delivery or industrial entrance of the building located on lower Michigan Avenue.

According to plaintiff, he made deliveries to the tavern about twice a week for the previous three months. Deliveries required plaintiff to descend the loading ramp behind a two-wheeled hand truck loaded with two 160-pound barrels of beer. In order to avoid losing control of the kegs, plaintiff would have to tip the hand truck back towards himself while descending the ramp.

An open dumpster was maintained at the top of the ramp for at least three months. The dumpster, which remained open continuously, faced the ramp and was filled with various types of debris.

Plaintiff testified that people working in the building used the dumpster and there was always some type of debris or dirt present on the ramp. The ramp was the only means of ingress and egress to the building for delivery men. Plaintiff stated that he knew of other delivery men who had complained of the loading ramp area's conditions prior to the date of his injury.

On the date in question, plaintiff entered the tavern, via the ramp, to determine the number of kegs needed, and then returned to his truck. As the lighting on the ramp was dim, plaintiff did not observe the condition of the ramp. Plaintiff then loaded the kegs onto the hand truck, proceeded three or four steps down the ramp and fell on a piece of cardboard.

Subsequently, plaintiff brought a negligence action against National. National then filed a third-party complaint against Arthur Rubloff. Defendants each moved for summary judgment, arguing that plaintiff failed to prove notice of the dangerous condition. The trial court granted defendants' motions.

The instant appeal followed.

## OPINION

We initially note that use of the summary judgment procedure is to be encouraged as an important tool in the expeditious disposition of a lawsuit. (*King v. Linemaster Switch Corporation* (1992), 238 Ill. App. 3d 729, 732, 606 N.E.2d 584.) The procedure's underlying policy is the facilitation of litigation; its benefits inure not only to the litigants in the saving of time and expense, but also to the community in avoiding congested trial calendars and the expense of unnecessary trials. (*Rerack v. Lally* (1992), 241 Ill. App. 3d 692, 694, 609 N.E.2d 727.) Nonetheless, the granting of summary judgment is a drastic method of disposing of a case, which should not be used unless there is no issue of material fact and it is free from doubt that the movant is entitled to judgment as a matter of law. (*Langer v. Becker* (1992), 240 Ill. App. 3d 823, 825, 608 N.E.2d 468.) "In determining whether a genuine issue of material fact exists, the trial court must construe the pleadings, depositions, admissions and affidavits on file *strictly against the movant and liberally in favor of the opposing party.*" (Emphasis added.) (*Rerack*, 241 Ill. App. 3d at 696.) The standard of review applicable in evaluating the propriety of a trial court's entry of summary judgment is *de novo. King*, 238 Ill. App. 3d at 732.

Plaintiff maintains that the trial court erred in entering summary judgment as an issue of material fact exists as to whether defendants exercised reasonable care with regard to the condition of the dumpster and the ramp. We agree.

■ In a cause of action for negligence, a plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from a breach of that duty. (*Grove v. City of Park Ridge* (1992), 240 Ill. App. 3d 659, 608 N.E.2d 421.) Regarding the conditions of real property, the scope of a landowner's or occupier's duty owed to entrants upon his premises traditionally depended on the status of the entrant. Though not an insurer of his customers' safety, the operator of a business owed his invitees a duty to exercise reasonable care to maintain his premises in a reasonably safe condition for use by invitees. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223; *Perminas v. Montgomery Ward & Co.* (1975), 60 Ill. 2d 469, 328 N.E.2d 290.) A substantially narrower duty was owed to licensees and trespassers. (*Pashinian v. Hartinoff* (1980), 81 Ill. 2d 377, 410 N.E.2d 21.) In the case *sub judice*, it is undisputed that plaintiff was a business invitee on defendants' property at the time he was injured. In 1984, the General Assembly enacted the Premises Liability Act (hereinafter the Act) (Ill. Rev. Stat. 1985, ch. 80, par. 301 *et seq.* (now codified as 740 ILCS 130/1 *et seq.* (West 1992))). Section 2 of the Act provides, in pertinent part:

"The distinction under the common law between invitees and licensees as to the duty owed by an owner or occupier of any premises to such entrants is abolished.

The duty owed to such entrants is that of reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them." (Ill. Rev. Stat. 1985, ch. 80, par. 302. (now codified as 740 ILCS 130/2 (West 1992)).)

Thus, while not significantly altering the common law duty owed by an owner or occupier of premises to invitees thereon, it did retract the special but limited immunity from tort liability to licensees. *Ward*, 136 Ill. 2d 132, 554 N.E.2d 223.

■ "Where a business invitee is injured by slipping on a foreign substance on the premises, liability may be imposed if the substance was placed there by the negligence of the proprietor or his servants, or, if the substance was on the premises through acts of third persons or there is no showing how it got there, liability may be imposed if it appears that the proprietor or his servant knew of its presence, or that the substance was there a sufficient length of time so that in the exercise of ordinary care its presence should have been discovered." (*Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 474, 173 N.E.2d 443; see also *Wroblewski v. Hillman's, Inc.* (1963), 43 Ill. App. 2d 246, 193 N.E.2d 470.) "Thus, where the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or

constructive; whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor." *Thompson v. Economy Super Marts, Inc.* (1991), 221 Ill. App. 3d 263, 265, 581 N.E.2d 885.

■ In the situation where there is proof that the foreign substance was a product sold or related to the landowner's or occupier's operations, and the plaintiff offers some further evidence, direct or circumstantial, however slight, such as the substance's location or the business practices of the defendant, from which it could be inferred that it was more likely that the defendant or his servants, rather than a customer, dropped the substance on the premises, the trial court should permit the negligence issue to go the jury. *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434; *Thompson*, 221 Ill. App. 3d 263, 581 N.E.2d 885.

■ In the case *sub judice*, we believe summary judgment was incorrectly entered for two reasons. First, plaintiff in his deposition testified that for three months prior to the incident the condition of the premises was one of a constant state of dim lighting, an open dumpster, perpetual dirt, debris and slipperiness and an inherently dangerous incline. Moreover, there was a showing that other delivery men had complained of this situation. Clearly, these are facts which, if proven, would go directly to the issues of notice and due care and, ultimately, of negligence. See *Maschhoff v. National Super Markets, Inc.* (1992), 230 Ill. App. 3d 169, 595 N.E.2d 665.

Secondly, there was testimony that building workers used these dumpsters and, thus, it is possible for the jury to infer that the cardboard's location on the ramp came about as a result of defendants' business practices (*e.g.*, negligent cleaning services, etc.).

## DISPOSITION

Therefore, we find, after reviewing the record in a light most favorable to plaintiff, that there exist disputed issues of material fact upon which a jury could find for plaintiff. Accordingly, we reverse the judgment of the circuit court of Cook County and remand for further proceedings not inconsistent with the views contained herein.

Reversed and remanded.

RIZZI, J., concurs.

JUSTICE GREIMAN, dissenting:

The majority opinion is a persuasive document—except it inadvertently mischaracterizes essential facts, some of which plaintiff conceded during oral argument.

For example, the majority asserts, "As the lighting on the ramp was dim, plaintiff did not observe the condition of the ramp." (271 Ill. App. 3d 655.) Neither the pleadings, affidavits nor depositions support the conclusion that the state of illumination on the ramp caused plaintiff's injuries and, in fact, plaintiff conceded at oral argument that he waived this argument on appeal.

Moreover, the record shows plaintiff observed the condition of the ramp prior to his fall. He testified that he looked but did not notice that the ramp was wet or uneven or bore any debris when he walked down it to enter the tavern or when, several minutes later, he crossed the ramp a second time to return to his truck to fill the order.

Plaintiff further testified that he had no knowledge as to how the cardboard came to be on the ramp or how long it remained there prior to his fall.

The majority also ignores the body of slip-and-fall cases where the plaintiff cannot establish the causal connection between the landowner's alleged negligence and the plaintiff's injury.

The owner of land or operator of a business located on the land owes an invitee a duty to exercise reasonable care to maintain the premises in a reasonably safe condition for use by the invitee; however, he does not insure the invitee's safety. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 141, 554 N.E.2d 223.) A landowner breaches his duty to the invitee who slips on a foreign substance if the substance was present by the negligence of the owner or his employees or a third party if the owner knew or should have known of its presence. (*Olinger v. Great Atlantic & Pacific Tea Co.* (1961), 21 Ill. 2d 469, 474, 173 N.E.2d 443 (plaintiff who slipped on a reddish substance on floor of defendant's store failed to show substance was related to defendant's business or any negligent maintenance of the premises).) In those cases where there is no evidence to explain the origin of the substance, the plaintiff must show its presence for a sufficient amount of time so that the landowner should have discovered its existence. (*Thompson v. Economy Super Marts, Inc.* (1991), 221 Ill. App. 3d 263, 581 N.E.2d 885, citing *Olinger*, 21 Ill. 2d at 474.) The plaintiff who satisfies this burden imputes to the landowner constructive notice of the substance, and his failure to remove the substance may reasonably be inferred as a proximate cause of the plaintiff's injuries. *Hayes v. Bailey* (1980), 80 Ill. App. 3d 1027, 1030, 400 N.E.2d 544 (verdict properly directed for defendant when plaintiff who slipped and fell on a wet floor provided no evidence showing defendant knew of this condition).

Plaintiff provided no evidence concerning the origin of the cardboard or the length of time it remained on the ramp before his

fall. Instead, plaintiff testified that *after* he slipped and fell he noticed a piece of cardboard on the ramp and *assumed* this material caused him to lose his footing. In the absence of any evidence tending to show actual knowledge or constructive notice, the trial court properly granted defendants' summary judgment motion. *Hayes*, 80 Ill. App. 3d at 1030-31; *Hresil v. Sears, Roebuck & Co.* (1980), 82 Ill. App. 3d 1000, 403 N.E.2d 678 (trial court properly held that evidence showing foreign substance upon which plaintiff allegedly slipped and fell could only have been on the floor for 10 minutes failed to provide store owner with constructive notice).

Plaintiff's argument that the cardboard was present on the ramp but that he merely failed to see it prior to his fall does not establish notice to defendants. The time element to establish constructive notice is a material factor, and it is incumbent upon plaintiff to offer some evidence showing that the cardboard was on the ramp long enough to constitute constructive notice. *Hayes*, 80 Ill. App. 3d at 1030; see *Thompson*, 221 Ill. App. 3d at 265 (plaintiff alleging she slipped on water and lettuce leaf which remained on floor of defendant's store for an unknown length of time failed to establish notice).

Alternatively, plaintiff argues that he was not required to establish actual knowledge or constructive notice for liability to attach for reasons stated in *Donoho v. O'Connell's, Inc.* (1958), 13 Ill. 2d 113, 148 N.E.2d 434. In *Donoho*, the Illinois Supreme Court stated that where a plaintiff slips and falls on a foreign substance which is a product sold or related to the defendant's operations, and the plaintiff offers evidence raising the inference that the defendant rather than a third party dropped the substance, the issue of negligence may be presented to the jury without establishing the element of notice.

There, plaintiff established that the substance upon which she slipped was a product sold by defendant's restaurant and more likely on the floor as a consequence of defendant's employee's clearing a table in the area of the fall 15 minutes earlier. Here, plaintiff has failed to show that the cardboard at issue is a product sold or related to the defendants' operations, much less that the placement of the cardboard upon the ramp was more likely a consequence of the acts of either defendant or its employees rather than a third party, especially since the ramp faced the street and could be accessed by anyone entering the building from the lower level of Michigan Avenue. See *Thompson*, 221 Ill. App. 3d at 226; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 817-18, 416 N.E.2d 328; compare *Maschhoff v. National Super Markets, Inc.* (1992), 230 Ill. App. 3d 169, 595 N.E.2d 665 (plaintiff sufficiently established defendant's awareness of the

dirty and slippery condition of the floor upon which he fell since defendant's manager witnessed the occurrence), with *Papadatos v. National Tea Co.* (1974), 21 Ill. App. 3d 616, 316 N.E.2d 83 (plaintiff who slipped and fell on unknown object in parking lot sufficiently demonstrated store owner had prior knowledge of hole surrounding the area at issue).

Instead, this case is analogous to *Kimbrough*, where the reviewing court affirmed summary judgment in favor of the defendant landowner since the plaintiff could not prove any causal connection between the alleged condition of the property (*i.e.*, from where the grease upon which she allegedly fell originated or the dangerous condition of the ramp) and her fall. As the *Kimbrough* court recognized, it is not enough for a plaintiff to show that he or she fell on a defendant's ramp; the plaintiff must go further and prove that some condition caused the fall and that this condition was caused by the defendant. *Kimbrough*, 92 Ill. App. 3d at 818.

Plaintiff has also failed to demonstrate that any material other than the cardboard or effluence (*i.e.*, debris or soot) proximately caused his fall. Plaintiff produced no evidence to show that the dumpster contributed in any manner to his injury in terms of engendering the cardboard or other waste which accumulated on the ramp causing him to slip and fall. In addition, he testified that on the day at issue the ramp was not wet and had no uneven surfaces. Liability cannot be predicated upon surmise or conjecture regarding the cause of injury; proximate cause can only be established when there is a reasonable certainty that the defendant's acts caused the injury. *Kimbrough*, 92 Ill. App. 3d at 817.

Plaintiff's testimony regarding the complaints of other workmen as to the conditions of the premises cannot be construed as notice to defendants for purposes of the summary judgment motion since they represent classic examples of hearsay. *Zonta v. Village of Bensenville* (1988), 167 Ill. App. 3d 354, 357, 521 N.E.2d 274 (in plaintiff's action for injuries sustained while leaning against and breaking defendant's window, purported statements of witnesses substantiating claim that defendant knew the window was defective constituted inadmissible hearsay); *cf. Dace v. Gilbert* (1981), 96 Ill. App. 3d 199, 421 N.E.2d 377 (summary judgment against plaintiff, in personal injury action based upon defendant's signalling plaintiff to proceed in traffic, proper since plaintiff admitted that he used his vision to judge traffic conditions).

Since plaintiff failed to demonstrate the existence of a genuine question as to the proximate cause of his injury, other than a piece of cardboard of unknown origin which rested on the ramp for an un-

known length of time, defendants were entitled to judgment as a matter of law.

Although this writer might prefer that most matters be determined by a jury, our legislature and supreme court have made a policy decision directing trial courts to enter summary judgment in appropriate cases in the interests of justice among the particular litigants and judicial economy. (See *Kimbrough*, 92 Ill. App. 3d at 819.) Harsh as this remedy may be, intermediate courts of review must exercise great care that they do not obliquely make a different policy choice by merely reversing summary judgments properly entered.

Any judge who has sat in the law motion division of the circuit court understands that the entry of summary judgment requires a certain degree of fortitude; it is infinitely easier to pass the decision to the trial judge to consider the same issues on a motion for directed verdict or to the jury. Better still from the judge's perspective, denials of summary judgments are not generally reviewable since they do not constitute final orders in a case. If appellate courts routinely turn our backs on these orders, we send a message to the courts below that they should not waste their time or agony on these motions.

Accordingly, I dissent from the majority.

JUSTICE RIZZI specially concurs:

I write this specially concurring opinion to address the dissent. In any opinion, when the factual discussion in the dissent is compared to the factual discussion in the majority opinion, it demonstrates quite clearly that this case presents factual questions to be determined by a trier of fact and not by arrogating or pontificating judges.

In addition, in view of the statements that appear in the dissent, I wish to clearly state that neither the author of the majority opinion nor myself believe that we have "obliquely" made a "different policy choice" from the legislature or the supreme court regarding the entry of summary judgments. Nor are we "merely reversing summary judgments properly entered." Moreover, neither the author of the majority opinion nor myself are "routinely turning our backs" on summary judgment orders, and we are not sending "a message to the courts below that they should not waste their time or agony on these motions." Instead, the author of the majority opinion and I are not sending any message whatsoever by reversing the summary judgment in this case. We merely feel that the summary judgment that was entered should be reversed for the reasons stated in the majority opinion. What concerns me, however, is that the dissent may be send-

662

ing a message to the courts below encouraging summary judgments. Summary judgments should neither be encouraged nor discouraged, but rather should be entered only in cases where warranted, dependent on the facts in each case.