(text box: 1) NO. 5-00-0216

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

KENNETH L. COPE, SHEILA M. COPE, )  Appeal from the

and KENDRA L. COPE, )  Circuit Court of

)  St. Clair County.

     Plaintiffs-Appellees, )

)

)  No. 96-CH-308 

)

STATE FARM FIRE AND CASUALTY )

COMPANY, )  Honorable

)  Patrick M. Young,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Kenneth L. Cope, Sheila M. Cope, and Kendra L. Cope (plaintiffs) filed suit against State Farm Fire and Casualty Company (defendant) and asked the St. Clair County circuit court to reform their personal-liability umbrella policy (umbrella policy) to reflect uninsured-motorist coverage of $1 million.  Following a bench trial, the circuit court found in favor of plaintiffs and reformed the umbrella policy.  On appeal, defendant claims that the circuit court erred in reforming the umbrella policy to provide excess uninsured-motorist coverage, because plaintiffs had neither requested nor paid for that coverage and because defendant had no duty under the Illinois Insurance Code (Code) (215 ILCS 5/1 
et seq.
 (West 1994)) to offer or make available excess uninsured-motorist coverage as a component of its umbrella policy.  Defendant also asserts that plaintiffs' claim for reformation is barred by the applicable statute of limitations.

The facts pertinent to this appeal follow.  On October 18, 1994, Kendra Cope was standing near a street-side telephone booth when she was hit by an uninsured motor vehicle. She suffered severe injuries.  At the time of the incident, plaintiffs had an automobile liability policy issued by defendant that provided $100,000 in uninsured-motorist coverage.  Plaintiffs also had an umbrella policy that provided up to $1 million in excess coverage.  The umbrella policy was initially purchased on January 4, 1983, and was renewed annually.  The umbrella policy had been renewed on January 4, 1994.  The 12-month policy period was to expire January 4, 1995.  At the time of the incident, Kendra Cope resided with her parents, Kenneth Cope and Sheila Cope, and she was an insured under her parents' policies.  Plaintiffs' umbrella policy provided excess coverage for several liability policies, including their automobile-liability coverage, homeowner's coverage, recreational-motor-vehicle liability coverage, watercraft-liability coverage, and residential-rental-liability coverage.  Plaintiffs' umbrella policy did not include excess coverage for injuries caused by uninsured or underinsured motor vehicles.  Although defendant made excess uninsured-motorist coverage available as an option under its umbrella policy, plaintiffs did not purchase that coverage. 

During the initial period that Kendra Cope was hospitalized, plaintiffs' insurance agent contacted plaintiffs to inform them that uninsured-motorist coverage applied in cases where a vehicle hit a pedestrian and to notify them that they had $100,000 in uninsured-motorist coverage for this loss.  Sometime later, plaintiffs called their agent to ask whether they had additional uninsured-motorist coverage under their umbrella policy.  The agent told plaintiffs they did not have that coverage.  The agent reminded plaintiffs that they had elected not to carry that coverage and that they had signed the application rejecting that coverage.  Once defendant was notified of the loss, it tendered the $100,000 in uninsured-motorist coverage.

Plaintiffs filed suit against defendant and sought a reformation of their umbrella insurance contract to reflect that plaintiffs had $1 million in excess uninsured-motorist insurance available to cover the October 18, 1994, incident.  Plaintiffs sought a reformation on the theory that defendant had failed to make a meaningful offer informing them of the availability of uninsured-motorist coverage as an option under its umbrella coverage and the limits and costs of that coverage.  After a bench trial, the circuit court entered a judgment in favor of plaintiffs and granted the prayer for the reformation of the umbrella policy.  The court found that the offer of excess uninsured-motorist coverage made by defendant was insufficient to enable plaintiffs to make an informed decision to accept or reject that coverage.  The court reformed the umbrella policy to reflect that $1 million in uninsured-motorist coverage was available to cover the October 1994 loss, and it referred the claim to arbitration for a resolution of plaintiffs' damages. 

On appeal, defendant claims that the trial court erred in granting plaintiffs' prayer for the reformation of the umbrella policy.  Defendant contends that insurance companies have no legal duty to provide excess uninsured-motorist coverage as a component of umbrella coverage and that, in any event, plaintiffs' agent adequately informed them of the availability of the excess uninsured-motorist coverage and plaintiffs neither requested nor paid a premium for excess uninsured-motorist coverage.  Defendant also points out that the insured has a responsibility to know the content of his policy and to examine his policy to determine whether all the requested coverages and limits of coverage are included in the policy, and it argues that plaintiffs breached this duty because they never questioned their agent or defendant about the fact that excess uninsured-motorist coverage was not listed on the declarations page of their umbrella policy.

In response, plaintiffs argue that if an insurer voluntarily chooses to make excess uninsured-motorist coverage available, it has a duty to provide a meaningful offer outlining the scope, limits of liability, and estimated cost of that coverage.  Plaintiffs rely upon 
Cloninger v. National General Insurance Co.
, 109 Ill. 2d 419, 488 N.E.2d 548 (1985), and, alternatively, the doctrine of voluntary undertaking to support their claim that defendant had and breached the duty to make a meaningful offer.

In this case, the trial court found that defendant's offer was not sufficient to allow plaintiffs to make an informed decision about whether to accept or reject the optional excess uninsured-motorist coverage.  Implicit in this finding is a determination that defendant had a duty to make a meaningful offer regarding the scope and cost of that coverage.  However, the trial court did not indicate the source for that duty.  Contrary to plaintiffs' argument, section 143a-2 of the Code (215 ILCS 5/143a-2 (West 1994)) does not impose such a duty on insurance companies.  Section 143a-2(5) plainly states, "Insurers providing liability coverage on an excess or umbrella basis are neither required to provide[] nor *** prohibited from offering or making available [excess uninsured-motorist coverage]."  215 ILCS 5/143a-2(5) (West 1994); see 
Cincinnati Insurance Co. v. Miller
, 190 Ill. App. 3d 240, 248, 546 N.E.2d 700, 705 (1989).

It is important to remember that an umbrella policy is at issue in this case.  The type of insurance coverage provided in an umbrella policy differs from that provided in automobile-liability coverage and consequently falls outside the scope of the Illinois uninsured-motorist insurance laws.  See 
Hartbarger v. Country Mutual Insurance Co.
, 107 Ill. App. 3d 391, 396, 437 N.E.2d 691, 694 (1982).  Section 143a-2(1) of the Code (215 ILCS 5/143a-2(1) (West 1994)) governs additional uninsured-motorist coverage and requires an insurer to provide uninsured-motorist coverage in an amount equal to the insured's bodily injury liability limits, unless specifically rejected by the insured.  There is no comparable requirement governing the provision of uninsured-motorist coverage in an umbrella policy.   Even if we were to assume for the sake of argument that the requirements of section 143a-2 were applicable to uninsured-motorist coverage in umbrella policies as plaintiffs contend, their position would not be improved.  A number of substantive legislative revisions have been made to section 143a-2 since 
Cloninger v. National General Insurance Co.
, 109 Ill. 2d 419, 488 N.E.2d 548 (1985), was decided.  The 1990 version of the statute (Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a-2(1)) applies in this case because the umbrella policy (though initially issued in 1983) has been renewed multiple times since the effective date of those revisions.  See 
Coronado v. Fireman's Fund Insurance Co.
, 131 Ill. App. 3d 450, 453, 475 N.E.2d 1048, 1051 (1985); 
Dickirson v. Pacific Mutual Life Insurance Co.
, 319 Ill. 311, 315, 150 N.E. 256, 257 (1926).  In 
DeGrand v. Motors Insurance Corp.
, 146 Ill. 2d 521, 533, 588 N.E.2d 1074, 1080 (1992), the Illinois Supreme Court considered the revisions to section 143a-2 and determined that the legislature had intentionally removed the "meaningful offer" requirements set out in the 
Cloninger
 decision.  The supreme court held that the 1990 version of section 143a-2 required an insurer to describe the extent of the coverage and to advise the insured of his right to reject any coverage in excess of the statutory minimum.  
DeGrand
, 146 Ill. 2d at 531, 588 N.E.2d at 1079.  The supreme court stated that the 1990 version no longer required the insurer to make a "meaningful" or "commercially reasonable" offer but, rather, placed the duty to reject the additional coverage on the insured.  
DeGrand
, 146 Ill. 2d at 533, 588 N.E.2d at 1080.

As to plaintiffs' voluntary-undertaking theory of liability, it is well-established that the duty of care imposed upon a defendant is limited to the extent of its undertaking.  See 
Frye v. Medicare-Glaser Corp.
, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (1992).  Assuming, 
arguendo
, that the doctrine is applicable in an economic-loss case, the fact that defendant chose to make excess uninsured-motorist coverage available as an option under its umbrella policy does not automatically impose on it a duty to meet the 
Cloninger
 meaningful–offer requirements.  In this case, the extent of defendant's undertaking, at most, was to notify consumers that excess uninsured-motorist coverage was an available option under its umbrella policy.  Plaintiffs have never alleged that they were unaware of the availability of that coverage; rather, plaintiffs have alleged that they were not provided with sufficient information to make an informed decision about whether to accept or reject the coverage.

In this case, plaintiffs have not shown that defendant had a statutory or common-law duty to make a meaningful offer informing consumers of the availability, limits, and costs of the optional uninsured-motorist coverage it made available under its umbrella policy.  Nor have they shown that defendant voluntarily undertook such a duty.  In the absence of a showing that there was a legal duty, we decline to impose such a responsibility on defendant in this case merely because it chose to make excess uninsured-motorist coverage available.  The trial court erred in entering a judgment reforming plaintiffs' umbrella policy to include up to $1 million in uninsured/underinsured-motorist coverage.  Given that the resolution of this issue is dispositive of the case, we need not address the statute-of-limitations issue.

For the reasons stated above, the judgment in favor of plaintiffs is reversed.

Reversed.

WELCH and RARICK, JJ., concur.

                                      NO. 5-00-0216

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

KENNETH L. COPE, SHEILA M. COPE, )  Appeal from the

and KENDRA L. COPE, )  Circuit Court of

)  St. Clair County.

     Plaintiffs-Appellees, )

)

)  No. 96-CH-308 

)

STATE FARM FIRE AND CASUALTY )

COMPANY, )  Honorable

)  Patrick M. Young,

     Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: December 5, 2001 

___________________________________________________________________________________

Justices
: Honorable Gordon E. Maag, P.J.

Honorable Thomas M. Welch, J., and 

Honorable Philip J. Rarick, J.,

Concur

___________________________________________________________________________________

Attorneys
 John W. Leskera, Robert D. Francis, Dunham, Boman & Leskera, 103 East B

for
 Street, Belleville, IL 62220

Appellant
 

___________________________________________________________________________________

Attorney
 Joseph B. McDonnell, Esq., Greensfelder, Hemker & Gale, 33 Bronze Pointe,

for
 Belleville, IL 62226

Appellees
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 12/05/01.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.